THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES WESTLAKE, BARBARA WESTLAKE, JAMES W. WESTLAKE, and GENEVA WESTLAKE | * * * * | |
| Plaintiffs | * * | NO: 4:09CV00861   SWW |
| V. | * * | |
| ED SANDRIDGE, MARK BEASLEY, FLOYD ANDERSON, SAMUEL SAM-SUMANA, TAAKOR HOLDINGS OF MISSOURI, INC., and TAAKOR TROPICAL HARDWOODS HOLDINGS, LTD. | * * * * * * * | |
| Defendants | | |

## ORDER

Plaintiffs James Westlake, Barbara Westlake, James W. Westlake and Geneva Westlake bring this action for fraud, violation of the Arkansas Deceptive Trade Practices Act, and civil conspiracy against Defendants Ed Sandridge ("Sandridge"), Floyd Anderson ("Anderson"), Mark Beasley ("Beasley"), Taakor Holdings of Missouri, Inc. ("Taakor Holdings of Missouri"), Taakor Tropical Hardwoods Holdings, Ltd. ("Taakor Holdings"), and Samuel Sam-Sumana ("Sam-Sumana").

Before the Court is a motion to dismiss for lack of personal jurisdiction by Anderson (docket entry #11), Plaintiffs' response in opposition (docket entry #15), and Anderson's reply (docket entry #22).  Also before the Court is Anderson's motion for discovery (docket entry #23) and Plaintiffs' response in opposition (docket entry #30).  After careful consideration, and for reasons that follow, Anderson's motion to dismiss will be granted, and his motion for discovery will be denied as moot.

**I.**

In early 2007, Plaintiff James Westlake ("Westlake") and an individual named Michael West became interested in harvesting tropical hardwoods in Sierra Leone, and the two traveled to the West African nation. According to Plaintiffs, Westlake's interest "was spawned by the efforts and representations of [Defendants] Mark Beasley and Ed Sandridge." Docket entry #15, at 1. By affidavit, Westlake reports that after he and West returned to the United States, Defendant Beasley invited him to Kansas City, Missouri to discuss logging in Sierra Leone. Westlake Aff., ¶B(a).[1] Westlake testifies: "While we were in Kansas City[,] Mark Beasley . . . mentioned that Floyd Anderson was very wealthy and it was his money that was primarily backing the [logging] project." *Id.*

After Westlake's trip to Missouri, he entered a logging contract under which he agreed to cut and haul timber in Sierra Leone, supplying his own labor and equipment. West entered a similar, separate contract. Plaintiffs assert, without providing any supporting evidence, that Westlake's contract is "by and between Plaintiffs and the closely held corporations Taakor Holdings of Missouri, Inc. and Taakor Holdings Tropical Hardwoods Holdings, Ltd."[2] Docket entry #15, at 2. However, a copy of the contract submitted by Plaintiffs bears only Westlake's signature and the signature of Ed Sandridge, in his capacity as President of "Taakor Tropical Hardwood, Ltd" ("TTH"), an entity that is not a party to this lawsuit. *See* docket entry #15, Ex. A.

---

[1] Westlake's affidavit is appended to Plaintiffs' response in opposition to Anderson's motion to dismiss (docket entry #15).

[2] The record contains no information about an entity named "Taakor Holdings Tropical Hardwoods Holdings, Ltd." The Court assumes that Plaintiffs refer instead to Defendant Taakor Tropical Hardwoods Holdings, Ltd.

Plaintiffs filed this action in state court,[3] alleging that Defendants Sandridge, Beasley, and Anderson--individually and as shareholders, officers, and directors of Defendants Taakor Holdings and Taakor Holdings of Missouri–entered into a civil conspiracy and induced them to enter the aforementioned logging contract and contribute labor and equipment to Defendants' logging operation in Sierra Leone. Plaintiffs claim that despite repeated demands, Defendants have refused to pay them for their equipment and labor.[4]

## II.

Anderson moves for dismissal of all claims against him on the ground that the Court lacks personal jurisdiction over him. Anderson asserts that he has never directed any activities toward the state of Arkansas or its residents, he has never personally transacted business with Plaintiffs, and he has never authorized anyone else to act on his behalf in connection with Plaintiffs.

Plaintiffs acknowledge that Anderson was never physically present in Arkansas, but they claim that the Court has specific jurisdiction[5] over him because he "purposefully and specifically

---

[3] Sandridge, Beasley, Taakor Holdings, and Taakor Holdings of Missouri removed the case to this court based on diversity of citizenship between the parties and an amount in controversy exceeding $75,000. Thereafter, Anderson joined in the removal.

[4] Additionally, Plaintiffs allege that Sandridge, Beasley, and Anderson "personally and corporately" paid $350,000 to Sam-Sumana, the Vice President of Sierra Leone, in return for the confiscation of Plaintiffs' equipment in Sierra Leone. Although Sam-Sumana is named as a defendant, he has not entered an appearance in this case, and it does not appear that he has been served a copy of the complaint and summons.

[5] The Supreme Court has identified two types of personal jurisdiction: general and specific. General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868 (1984). Specific personal jurisdiction, in contrast, exists only if the

directed his activities at Plaintiffs and thus availed himself of the laws and benefits of this state in pursuit of the contractual benefits set forth in the agreement." Docket entry #15, at 3.

A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state. Arkansas's long-arm statute permits the assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

Five factors should be considered when determining the sufficiency of a defendant's contacts with the forum state: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest in the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.,* 89 F.3d. 519, 522-23 (8th Cir. 1996). The first three factors are closely related and are of primary importance, while the last two are secondary. *See id.* at 523.

Plaintiffs maintain that Anderson made contact with the state of Arkansas through his son, Austin Anderson ("Austin"), and they present evidence that Anderson sent Austin to the state to live with Michael West. West testifies by affidavit that Austin lived at his home in Perry

---

injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id.* at 414, 104 S.Ct. 1868. In this case, Plaintiffs proceed under a theory of specific jurisdiction and do not allege that Anderson has had "continuous and systematic" contacts with Arkansas.

County, Arkansas for approximately two months in 2008. James West Aff., at 2.[6] According to West, Austin served a prison sentence in Missouri and needed a job as a condition of his probation, and his father "needed someone he could trust to report to him every day on the progress being made in Perry County on getting the Sierra Leone logging operation up and running." James West Aff. at 3.

West reports that while Austin lived at his home, he made daily progress reports to his father. James West Aff. at 3. Additionally, West's wife testifies that Austin told her that he was reporting to his father on a regular basis about progress that West and Westlake were making in obtaining equipment and manpower for the Sierra Leone logging operation. *See* Janie West Aff. at 2.

Assuming for the purpose of review that Anderson dispatched his son to Arkansas to observe and report Westlake's progress under his logging agreement with TTH, the Court does not find that Anderson thereby purposefully availed himself of the privilege of conducting business in the state, thus invoking the benefits and protections of Arkansas law. The terms of the logging contract between Westlake and TTH refer to Westlake as an independent contractor, and nothing in the agreement requires that Westlake provide equipment and manpower from Arkansas. Docket entry #15, Ex. A, docket entry #11, Ex. D. Neither Westlake's activities in Arkansas nor Anderson's observation of those activities can satisfy the requirement of contact with the forum state. *See Hanson v. Dencla*, 357 U.S. 235. 353. 78 S. Ct. 1228, 1239 (1958)("The unilateral activity of those who claim some relationship with a nonresident

---

[6]James West's and Janie West's affidavits, which are not identified as exhibits, are appended to Plaintiffs' response in opposition to Anderson's motion to dismiss (docket entry #15).

defendant cannot satisfy the requirement of contact with the forum state.").

Next, Plaintiffs assert that Anderson made contact with Arkansas via telephone communications. Westlake testifies that Anderson made a telephone call to Arkansas to negotiate the release of two of Westlake's employees, who were being held in Sierra Leone on false charges. James Westlake Aff. at 5. According to Westlake, Anderson offered him $350,000 and informed him that if he did not accept, Anderson would see that "the boys" went to "the pen." *Id.* It does not appear that Anderson's call to West has any connection to Plaintiffs' claims; and in any event, the Court finds that Anderson's telephone communication is insufficient to confer personal jurisdiction. *See Porter v. Berall*, 293 F. 3d 1073, 1076 (8th Cir. 2002)("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); *see also Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982)(holding that phone and facsimile communications to the forum, purchase orders and payments sent to the forum, a choice of law clause within the contract regarding the forum state, and delivery of the product within the forum state were not enough to satisfy minimum contacts).

Finally, Plaintiffs contend that Anderson took over "Taakor operations while ignoring any corporate formality" and that he was aware of the agreement between Westlake and "Taakor." It is undisputed that Taakor Holdings is an entity organized under the laws of Cyprus, formed for the purpose of acquiring 100% of the capital stock of TTH.[7] *See* Anderson Aff., ¶12; Sandridge Aff., ¶5. Anderson testifies that he is merely a minority shareholder of Taakor Holdings. He reports that in September 2007, after Westlake entered a logging contract

---

[7]The record contains no information about Defendant Taakor Holdings of Missouri.

with TTH, he purchased 3% of Taakor Holding's outstanding shares, and he made additional investments in the company in late 2007 and February 2008. Anderson, Sandridge, and Beasley testify that Sandridge and Beasley are the cofounders and majority shareholders of Taakor Holdings, that Sandridge serves as the company's president and Beasley serves as vice president, and that Anderson has never made business decisions on behalf of Taakor Holdings and lacks any authority to do so. *See* Anderson Aff., ¶¶ 12-21; Sandridge Aff., ¶¶ 6-15; Beasley Aff., ¶¶ 3-12.

Even assuming that Anderson controlled "the Taakor operations" as Plaintiffs assert, without evidence that Taakor Holdings, Taakor Holdings of Missouri, or TTH had contact with the state of Arkansas sufficient to confer personal jurisdiction, it is immaterial whether Anderson controlled the entities, ignored corporate formalities, or treated the entities as his alter ego. Plaintiffs have come forward with evidence that Westlake, an Arkansas resident, entered a logging contract with TTH, a wholly-owned subsidiary of Taakor Holdings. But merely entering a contract with Westlake does not amount to purposeful contact with Arkansas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2184-85 (1985)(noting that prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum). Plaintiffs argue that "Taakor's" continued existence and initial pursuit of logging activities in Sierra Leone depended upon the equipment and employees supplied by Plaintiffs under the logging contract. However, they offer no evidence that the contract was negotiated or entered in Arkansas, and the terms of the contract do not contemplate or require performance in Arkansas.

Without question, the nature, quality, and quantity of Anderson's alleged contacts with

Arkansas are insufficient to confer personal jurisdiction, and although the forum state has a legitimate interest in providing a forum for its residents, due process requires that Anderson's conduct and connection with the state are such that he should reasonably anticipate being haled to court here. The Court finds that Plaintiffs have failed to furnish factual evidence sufficient to show that Anderson, either directly or otherwise, had contacts with the state of Arkansas sufficient to make a prima facie showing of personal jurisdiction.[8]

### III.

For the reasons stated, Defendant Floyd Anderson's motion to dismiss for lack of personal jurisdiction (docket entry #11) is GRANTED. Defendant Anderson is dismissed as a party to this action, and the claims against him are DISMISSED WITHOUT PREJUDICE. It is further ordered that Defendant Anderson's motion for jurisdictional discovery (docket entry #23) is DENIED AS MOOT.

IT IS SO ORDERED THIS 27th DAY OF May, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[8]Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts, and the prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id*. (quoting *Block Indus. v. DHJ Indust., Inc*. 495 F.2d 256, 259 (8th Cir. 1974)).